UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 07-10083-RGS

UNITED STATES OF AMERICA

v.

JULIO SANDOVAL-VASQUEZ

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

October 31, 2007

STEARNS, D.J.

Defendant Julio Sandoval-Vasquez is a citizen of Guatemala. He is charged with illegal entry after deportation in violation of 8 U.S.C. § 1326. He seeks to suppress evidence of his personal identity alleged to have been obtained as the result of an illegal arrest. While there is some dispute over the underlying facts, for present purposes the court will accept defendant's material allegations as true. These are: (1) that he was arrested in his mother's apartment where he was then living as a guest; (2) that prior to the arrest, he had not voluntarily given his name and date of birth to police; (3) that the warrant on which police relied in entering the apartment and making the arrest had been withdrawn; and (4) the warrant was erroneously listed as "active" in the Commonwealth's Warrant Management System.[1]

## BACKGROUND

On November 10, 1999, Sandoval-Vasquez was found guilty in Brighton District Court of receiving a stolen motor vehicle, possession of burglarious implements, unlicensed operation,

---

[1]The only material dispute is over the second of these allegations.

and other motor vehicle violations. He was sentenced to a year's probation and ordered to pay a fine. A few months later, he was found to have violated the conditions of his release. On April 28, 2000, the court imposed a suspended sentence and extended Sandoval-Vasquez's probation (ultimately to April 26, 2004). On May 24, 2001, Sandoval-Vasquez was deported to Guatemala. For reasons that are not clear in the record, the Brighton Court issued a probation warrant for Sandoval-Vasquez on June 22, 2001. On August 4, 2004, the court terminated Sandoval-Vasquez's probation, but neglected to withdraw the warrant. In the meantime, Sandoval-Vasquez was convicted of illegally reentering the United States and was deported a second time. He reentered the United States yet again sometime prior to the arrest that resulted in the instant indictment. On February 21, 2007, Sandoval-Vasquez was approached by Boston police officer Stephen Green on Tremont Street near the Park Street MBTA station. In response to a request (or demand) for identification, Sandoval-Vasquez gave Green his name and date of birth. Green later used the information to run an outstanding warrants check. The search turned up the June 2001 warrant. Police then entered Sandoval-Vasquez's apartment and placed him under arrest. He was booked at Boston Police District 1. As part of the booking procedure, he was fingerprinted and photographed. The next day, Sandoval-Vasquez appeared in state court to answer to the outstanding warrant. The court determined that the warrant had been mistakenly left open. Following the hearing, Sandoval-Vasquez was taken into custody by agents of Immigration and Customs Enforcement (ICE). The instant indictment ensued.

## DISCUSSION

The issue of law before the court is whether evidence of a defendant's identity is a

suppressible "fruit" of an illegal arrest.  The issue would, at least in an immigration context, appear to have been answered definitively by the Supreme Court in Immigration and Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant . . . in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").  A few courts, however, have taken the position that Lopez-Mendoza, on its facts, precludes only a challenge to the court's personal jurisdiction over a defendant, and not a challenge to tangible evidence of identity alleged to have been illegally seized.  See, e.g., United States v. Olivares-Rangel, 458 F.3d 1104, 1112 (10th Cir. 2006).[2]

The division of authority, however, weighs heavily in favor of the proposition that when the court in Lopez-Mendoza said "never," it did not mean "sometimes" or even "hardly ever." See United States v. Ortiz-Hernandez, 427 F.3d 567, 577 (9th Cir. 2005) (identity may never be suppressed, even in cases involving egregious constitutional violations).  Compare United States v. Roque-Villanueva, 175 F.3d 345, 346 (5th Cir. 1999) (never suppressible), and United States v. Navarro-Diaz, 420 F.3d 581, 584-585 (6th Cir. 2005) (same), and United States v. Bowley, 435 F.3d 426, 430-431 (3rd Cir. 2006) (same), with United States v. Guevara-Martinez, 262 F.3d 751, 755-756 (8th Cir. 2001) (sometimes suppressible), and Olivares-Rangel, 458

---

[2]These courts appear to find it unpersuasive that the Supreme Court framed the Lopez-Mendoza issue as "whether an admission of unlawful presence in this country made subsequent to an allegedly unlawful arrest must be excluded as evidence in a civil deportation hearing."  Lopez-Mendoza, 468 U.S. at 1034.  The Court expressly concluded that "the exclusionary rule need not be applied in such a proceeding."  Id.

F.3d at 1111 (same).³

As a practical matter, it is not clear that the dispute has any real significance.  While in Ortiz-Hernandez, the Ninth Circuit affirmed the suppression of fingerprints obtained from an alien defendant for investigative purposes after his illegal arrest, in the same breath the Court acknowledged that no basis existed for the suppression of the defendant's corporeal appearance or his criminal record.

> While the original set of Ortiz-Hernandez's fingerprints should be suppressed as wrongfully obtained, the government is now aware of Ortiz-Hernandez's identity; it may rely on his identity, as well as his criminal and immigration record, in bringing § 1326 criminal charges against him.  See United States v. Guzman-Bruno, 27 F.3d 420, 422 (9th Cir. 1994) (affirming the district court's conclusion that neither the defendant's "identity nor the records of his previous convictions and deportations could be suppressed as a result of the illegal arrest"); accord United States v. Roque-Villanueva, 175 F.3d 345, 346 (5th Cir. 1999) (affirming the district court and refusing to suppress evidence of identity obtained in an illegal traffic stop, concluding that "[e]ven if the [d]efendant was illegally stopped, neither his identity nor his INS file are suppressible").

Ortiz-Hernandez, 427 F.3d at 577; see also United States v. Santana, 427 U.S. 38, 42 (1976)

---

³In United States v. Mendez-de Jesus, 85 F.3d 1, 4 n.3 (1st Cir. 1996), the First Circuit held out a "glimmer of hope" that a defendant's identity might be suppressible in cases of egregious Fourth Amendment violations.  The First Circuit based its conclusion on Supreme Court language implying that the exclusionary rule might apply where there are "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained."  Lopez-Medoza, 468 U.S. at 1050-1051.  That statement, however, is dictum in that it had no application to the Court's earlier ruling that the exclusionary rule never operates to suppress a person's identity.  Moreover, the only element of egregiousness cited by defendant (other than an unsupported allegation that he is a possible victim of "racial profiling") is the fact that police acted on an aged warrant without making any attempt to ascertain its validity.  Whether this by itself could be deemed "egregious conduct" is dubious.  See Arizona v. Evans, 514 U.S. 1, 15 (1995).  See also United States v. Del Toro Gudino, 376 F.3d 997, 1001 (9th Cir. 2004) (the egregiousness of the constitutional violation does not change the rule that "the simple fact of who a defendant is cannot be excluded.").

(the rule that a person has no reasonable expectation of privacy in his corporeal appearance is well established). Even those courts that have held that Lopez-Mendoza does not automatically preclude the suppression of identification evidence have expressly concluded that fingerprints taken as part of an otherwise routine booking procedure are not subject to exclusion. Olivares-Rangel, 458 F.3d at 1113-1114; United States v. Garcia-Beltran, 389 F.3d 864, 868-869 (9th Cir. 2004); Guevara-Martinez, 262 F.3d at 756.

Moreover, because section 1326 defines a "continuing" violation, if the court were to suppress all evidence of Sandoval-Vasquez's identity and dismiss the indictment, upon his setting foot outside the courtroom, he would again be in violation of the statute, as he would still be a person "found" in the United States without authorization after a prior deportation.[4] Upon being rearrested by immigration authorities, Sandoval-Vasquez would again be photographed and fingerprinted without any hint of unlawfulness. See United States v. Flores-Sandoval, 422 F.3d 711, 715 (8th Cir. 2005). Empty gestures do not further the primary purpose of the exclusionary rule, which is not to confer personal rights on criminal defendants, but to deter unlawful government conduct.

ORDER

For the foregoing reasons, the motion to suppress is DENIED. As the issue raised is one

---

[4] As the Court noted in Lopez-Mendoza: "[Respondent] is a person whose unregistered presence in this country, without more, constitutes a crime. His release within our borders would immediately subject him to criminal penalties. His release would clearly frustrate the express public policy against an alien's unregistered presence in the country. Even the objectives of deterring Fourth Amendment violations should not require such a result. The constable's blunder may allow a criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime." 468 U.S. at 1047.

of law, no evidentiary hearing is required.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE